ATSI COMMUNICATIONS,
INC., Plaintiff,

v.

The SHAAR FUND, LTD.,
et al., Defendants.

No. 02 Civ. 8726(LAK).

United States District Court,
S.D. New York.

Feb. 25, 2005.

Maryann Peronti, Koerner, Silberberg & Weiner, LLP, New York City, Stephen R. Smith, Gary M. Jewell, Christian, Smith & Jewell, Houston, TX, for Plaintiff.

Peggy Kuo, Wilmer, Cutler, Pickering, Hale and Dorr LLP, Washington, DC, for Defendants Rose Glen Capital Management L.P., RGC International Investors, LDC, Wayne Bloch, Gary Kaminsky, and Steven Katznelson.

Jonathan M. Sperling, Covington & Burling, New York City, for Defendants Levinson Capital Management, The Shaar Fund, Ltd., Shaar Advisory Services, N.V., and Samuel Levinson.

Thorn Rosenthal, Janet A. Beer, Cahill, Gordon & Reindel LLP, New York City, for Defendant Trimark Securities, Inc.

Michael J. Dell, Robert A. de By, Kramer, Levin, Naftalis & Frankel LLP, New York City, for Defendants InterCarribean Services, Ltd., Citco Funds Services (Curacao) N.V., Hugo Van Neutegem, W.J. Langeveld, Luc Hollman, and Declan Quilligan.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff ATSI Communications, Inc. ("ATSI") brings this action for alleged violations of federal securities laws and on various state law theories in connection with its sales of convertible preferred securities to certain defendants. A majority of the defendants move to dismiss.[1] They

---

**1.** The motions before the Court are by the following groups of defendants: (1) Levinson Capital Management ("Levinson Capital"), The Shaar Fund, Ltd. ("Shaar Fund"), Shaar Advisory Services, N.V. ("Shaar Advisory"), and Samuel Levinson, (2) Rose Glen Capital Management L.P. ("Rose Glen") and RGC International Investors, LDC ("RGC"), (3) Trimark Securities, Inc. ("Trimark"), (4) InterCarribean Services, Ltd. ("InterCarribean"), Citco Funds Services (Curacao) N.V. ("Citco"), and Hugo Van Neutegem, (5) W.J. Langeveld, (6) Luc Hollman, (7) Declan Quilligan, and (8) Wayne Bloch, Gary Kaminsky,

argue, among other things, that the complaint fails to plead fraud with particularity as required by Fed.R.Civ.P. 9(b) and the Private Securities Litigation Reform Act ("PSLRA").[2]

### The Complaint

The third amended complaint ("Complaint") centers around an alleged scheme involving ATSI convertible preferred stock.[3] According to the Complaint, defendants Levinson and Rose Glen allegedly defrauded plaintiff into selling multiple series of this stock to entities they controlled or were controlled by.[4] The preferred was convertible into common stock based on a conversion price that was at or below the price of ATSI common stock.[5] The number of shares of common stock that the holders of the preferred would receive upon conversion therefore stood to increase if the price of common stock decreased. This feature, plaintiff contends, created an incentive for defendants to ma-

nipulate the price of the common stock downwards.[6] Although the shares of common stock would fall in price, defendants who had sold short could use the common issued upon conversion to cover their positions.[7]

To induce plaintiff to sell the preferred, Levinson and Rose Glen allegedly promised, *inter alia*, that they and the entities they controlled would not put pressure on the price of ATSI common stock.[8] Despite these assurances, the defendants allegedly used short sales and other devices to manipulate downward the price of ATSI common stock.[9] They allegedly profited from the scheme by covering their short positions using the common stock issued upon conversion.[10]

Jurisdiction is based on the federal question presented by the securities claims. The Complaint alleges that the Levinson defendants, Rose Glen, and Trimark violated Section 10(b) of the Secu-

and Steven Katznelson. Five defendants—three of whom have not been served—have not moved.

2. 15 U.S.C. § 78u–4.

3. Six of the eight motions before the Court are for dismissal of the third amended complaint. The other two motions are by defendants Quilligan and Hollman, who have not been served with this complaint and instead move to dismiss the first amended complaint. In light of the Court's ruling, the differences between the complaints insofar as they relate to these two defendants are of no consequence.

4. Cpt. ¶¶ 116–20, 158–60. Levinson allegedly controlled Levinson Capital, Shaar Fund, and Shaar Advisory Services (collectively, the "Levinson defendants"). Cpt. ¶¶ 322–37. Rose Glen allegedly was controlled by RGC (collectively, the "Rose Glen defendants"). *Id.* ¶¶ 338–42. The Complaint does not allege a relationship between the Levinson and Rose Glen defendants.

5. In particular, the preferred was convertible based on the lesser of (1) a certain fixed price or (2) the average (or a percentage thereof) of

the five lowest closing bid prices of the common stock during the ten trading days preceding the date of conversion. Sperling Decl. (5/9/03) Ex. G (Certificate of Designation for Series B Preferred Stock, § 6.1), Ex. J (Certificate of Designation for Series C Preferred Stock, § 6.1), Ex. M (Certificate of Designation for Series D Preferred Stock, § 6.1); Kuo Decl. (5/9/03) Ex. E2 (Certificate of Designation for Series E Preferred Stock at 10).

6. *E.g.*, Cpt. ¶ 83–86.

7. *E.g.*, *id.* The mere existence of the preferred no doubt put downward pressure on the price of the common stock. Any conversion of the preferred into common stock—even at rates unfavorable to the holders of the preferred—would have increased the number of shares of common stock and therefore diluted its value. *See Gurary v. Winehouse*, 190 F.3d 37, 40 (2d Cir.1999).

8. *E.g.*, Cpt. ¶¶ 116–17, 158–59.

9. *E.g.*, *id.* ¶¶ 83–86, 184–91.

10. *E.g.*, *id.* ¶¶ 83–86.

rities and Exchange Act of 1934 (the "Exchange Act")[11] and Rule 10b–5[12] thereunder. It alleges control person liability under Section 20(a) of the Exchange Act[13] against the remaining defendants.

This Court previously granted motions by the Rose Glen and Levinson defendants to dismiss the first amended complaint for failure to satisfy the pleading requirements of Rule 9(b) and the PSLRA.[14] Plaintiff has done little to correct the shortcomings in its pleading.

### Discussion

The Complaint asserts claims for misstatements and omissions[15] and manipulation[16] against Rose Glen and the Levinson defendants, as well as a manipulation claim against Trimark.

### A. Standards Governing Motions to Dismiss

In deciding a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.[17] Dismissal is inappropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[18] Although such motions are addressed to the pleadings, a district court may consider also the full text of documents "integral" to the Complaint and relied upon by plaintiffs.[19] Accordingly, review of certain exhibits attached to defendants' moving papers is appropriate.[20]

As this is a securities fraud case, the complaint must meet the heightened pleading requirements of Rule 9(b) and the PSLRA. The PSLRA requires that a complaint alleging misstatements or omissions "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading."[21] In addition, where allegations of misstatements and omissions are made on information and belief, the complaint must "state with particularity all facts on which that belief is formed."[22]

■ Two requirements of Rule 9(b) are relevant to this motion. First, Rule 9(b) requires that plaintiffs alleging fraud state "the circumstances constituting fraud ... with particularity."[23] Allegations that are "conclusory" or "unsupported by asser-

11. 15 U.S.C. § 78j(b).

12. 17 C.F.R. § 240.10b–5.

13. 15 U.S.C. § 78t(a).

14. ATSI Communications, Inc. v. The Shaar Fund, Ltd., No. 02 Civ. 8726(LAK), 2004 WL 616123 (Mar. 30, 2004). In addition, it granted motions by Neutegem, InterCarribean, and Citco (collectively, the "Citco defendants") and Langeveld to dismiss for lack of personal jurisdiction. ATSI Communications, Inc. v. The Shaar Fund, Ltd., No. 02 Civ. 8726(LAK), 2004 WL 909173 (April 28, 2004).

15. See 17 C.F.R. § 240.10b–5(b).

16. See id. § 240.10b–5(a) and (c).

17. Flores v. S. Peru Copper Corp., 343 F.3d 140, 143 (2d Cir.2003); Levy v. Southbrook Int'l Invs., Ltd., 263 F.3d 10, 14 (2d Cir.2001), cert. denied, 535 U.S. 1054, 122 S.Ct. 1911, 152 L.Ed.2d 821 (2002).

18. Cohen v. Koenig, 25 F.3d 1168 (2d Cir. 1994) (quoting Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

19. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir.2002).

20. Defendants provide the purchase agreements and certificates of designation for the ATSI preferred stock that they purchased.

21. 15 U.S.C. § 78u–4(b)(1).

22. Id.

23. Fed.R.Civ.P. 9(b).

tions of fact" are insufficient.[24] Second, the rule generally does not permit information and belief allegations except for matters that are "peculiarly within the opposing party's knowledge," in which case the allegations must be "accompanied by a statement of facts upon which the belief is founded."[25]

### B. Misstatements and Omissions

The principal misrepresentations allegedly made by the Levinson defendants were that they intended to be long-term investors in ATSI and that they would not put pressure on the stock by, for example, short selling.[26] ATSI allegedly relied on these misrepresentations in deciding to sell convertible preferred securities to Shaar Fund, an entity that the Levinson defendants supposedly controlled.[27]

■ A failure to carry out a promise made in connection with a securities transaction "does not constitute fraud unless, when the promise was made, the defendant secretly intended not to perform or knew [that] he could not perform."[28] Plaintiff's allegations that the Levinson defendants secretly intended not to invest long-term or put pressure on the stock are made on information and belief.[29] The sole factual allegation it relies upon to support its belief is that the stock prices of most of the public companies that the Levinson defendants invested in declined within one year of the investment despite an upswing in the market during the same time periods.[30] Plaintiff therefore argues that it would be permissible to infer that the Levinson defendants "participated in similar 'death spiral' schemes with other companies" and secretly intended to do the same with ATSI.[31]

■ Plaintiff seeks to leap too far. It cannot cure an absence of factual allegations to establish one fraud by making equally unsupported allegations that the defendants committed other frauds. The allegations about these other alleged frauds are thin indeed. The Complaint does not identify the other allegedly defrauded companies, the type(s) of investments the Levinson defendants allegedly made, the dates of the alleged investments, the dates of the alleged declines in stock prices, and what the Levinson defendants allegedly did to defraud the companies.[32]

---

**24.** *Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir.1986).

**25.** *Luce,* 802 F.2d at 54 n. 1 (citing *Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir.1972)); *Schlick v. Penn–Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir.1974), *overruled on other grounds by Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 1100 n. 9, 1100–06, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991).

**26.** Cpt. ¶¶ 116–17.

**27.** *Id.* ¶¶ 118–20.

**28.** *Gurary,* 190 F.3d at 44 (quoting *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1176 (2d Cir.1993)).

**29.** Cpt. ¶¶ 130, 132, 135; ATSI Mem. in Opp. to Levinson Motion 12.

**30.** ATSI Mem. in Opp. to Levinson Motion 12. Plaintiff's assertion is based on its alleged search of the Securities and Exchange Commission's Edgar database. According to plaintiff, thirty eight public companies reported an investment by one or more of the Levinson defendants. Cpt. ¶ 98. Thirty of those companies experienced a decline (in some cases, a dramatic decline) in share price within one year after the investment, and the NASDAQ rose during the same periods. *Id.*

**31.** ATSI Mem. in Opp. to Levinson Motion 12.

**32.** *See Rombach v. Chang,* 355 F.3d 164, 171 (2d Cir.2004) (Rule 9(b) is intended "provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit.") (quoting *O'Brien v. Nat'l Property Analysts Partners,* 936 F.2d 674, 676 (2d Cir.1991)).

That most of the companies the defendants invested in experienced drops in their stock prices within one year of the investments does not, by itself, suggest fraud. To conclude otherwise would be to subject many investors in risky or speculative ventures to allegations of securities fraud.[33]

█ The remaining allegations against the Levinson defendants are equally deficient. The Levinson defendants allegedly misrepresented that Shaar Fund was an accredited investor and that the money it invested came from a certain family in the United Kingdom.[34] In addition, they allegedly failed to disclose that they intended to use "multi-tiered offshore entities" to fund the transaction and that most of the companies they had invested in became "financially impaired."[35] The Complaint does not, however, explain how any risk concealed by these alleged misrepresentations and omissions caused plaintiff's losses.[36] Plaintiff's allegation that it "would [not] have accepted the Levinson [defendants] ... if not for"[37] this alleged misconduct suggests transaction causation, not loss causation. "It is long settled that a securi-

ties-fraud plaintiff 'must prove both transaction and loss causation.' "[38]

The allegations against Rose Glen also fail to comply with Rule 9(b) and the PSLRA. The Complaint alleges that Rose Glen misrepresented that it intended to invest in ATSI for the long-term, that it would not sell more than ten percent of the volume on any given day, and that it was an accredited investor.[39] It alleges also that Rose Glen failed to disclose its intention of putting pressure on the stock and its alleged participation in similar schemes.[40] As with the Levinson defendants, the sole factual allegation plaintiff relies upon to support these allegations is that the stock prices of most of the public companies that Rose Glen invested in dropped within one year of the investment.[41] These allegations fail for the reasons that the allegations against the Levinson defendants fail—the Complaint fails adequately to allege falsity and loss causation.[42]

### C. Manipulation

█ The nub of plaintiff's manipulation claim against Rose Glen and the Levinson

---

**33.** Nor does ATSI allege with particularity that the Levinson defendants acted inconsistently with the representations upon which it relies—that is, that the Levinson defendants did not invest for the long-term and that they manipulated downward the price of ATSI stock. As discussed in the next section, these allegations are made on information and belief, but the factual allegations plaintiff relies upon to support them do not give rise to a reasonable inference of fraud.

**34.** Cpt. ¶ 116.

**35.** *Id.* ¶ 117.

**36.** *See Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir.2005) ("[T]o establish loss causation, 'a plaintiff must allege ... that the subject of the fraudulent statement or omission was the cause of the actual loss suffered.' ") (quoting *Suez Equity Investors, L.P.*

*v. Toronto–Dominion Bank*, 250 F.3d 87, 95 (2d Cir.2001)).

**37.** Cpt. ¶ 120; ATSI Mem. in Opp. to Levinson Motion 6.

**38.** *Lentell*, 396 F.3d at 172 (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir.1994)).

**39.** Cpt. ¶ 158.

**40.** *Id.* ¶ 159.

**41.** *Id.* ¶ 169; ATSI Mem. in Opp. to Rose Glen Motion 5–6.

**42.** The Complaint alleges also that Rose Glen misrepresented the amount that it intended to invest in the company. For reasons explained in this Court's prior order, this claim is time-barred. *ATSI*, 2004 WL 616123, at *3.

defendants is that they used short-selling and other devices to drive down the price of ATSI common stock in order to obtain more shares upon conversion of the preferred.[43] These defendants allegedly profited by covering their short positions using the common stock obtained from conversion of the preferred.[44]

The Complaint does not allege with particularity any trades or other activities that Rose Glen and the Levinson defendants engaged in to manipulate downward the price of ATSI common stock. Nor does it allege with particularity that the defendants sold the common stock they obtained from conversion of the preferred. Instead, plaintiff's manipulation allegations rest entirely on information and belief.[45] The Complaint sets forth four categories of factual allegations upon which this belief is based. The inferences that plaintiff would draw are far-fetched, to say the least.

*First,* plaintiff alleges that "massive" sales and "huge" price declines on four days in April 2000 must have been the result of manipulation by Shaar Fund because it "was one of the few entities that possessed the amount of shares [neces-

sary] to support the volume trading numbers." [46] The Complaint alleges that ATSI's chief financial officer and another employee were "intimately familiar" with major shareholders, that they "frequently" contacted those shareholders, and that they were "always" assured by those shareholders that they were not selling.[47] From these allegations, plaintiff argues that the heavy trading in April 2000 must have been the result of manipulation by Shaar Fund.[48] These vague allegations are far too conclusory to justify a conclusion that Shaar Fund traded on the days in question, let alone that it was engaged in a manipulation.

*Second,* the Complaint alleges that a drop in ATSI's stock price in the days prior to defendants' conversion of preferred into common resulted in conversion rates more favorable to the defendants and therefore must have been the result of a manipulation.[49] According to the Complaint, the number of shares of common stock that the defendants obtained upon conversion of the preferred was based on the "Reference Price," which was an average of the five lowest prices during the ten days prior to the conversion (the "look-

---

43. Cpt. ¶¶ 83, 85.

44. *Id.* The parties contest whether plaintiff has standing to assert its manipulation claim. Only actual purchasers and sellers of securities may bring a private damages action under Section 10(b). *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 749, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Plaintiff argues that it has standing because it sold convertible preferred shares and/or engaged in what it vaguely describes as "equity financing" deals. ATSI Mem. in Opp. to Rose Glen Motion 13; Cpt. ¶¶ 179–80. Defendant Rose Glen argues that the sales of preferred do not confer standing because, among other things, they are not the securities alleged to have been manipulated. Rose Glen Mem. 8. The Court does not resolve the issue. Even assuming *arguendo* that plaintiff has standing, its manipulation claim fails under Rule 9(b). *See*

*Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 97 n. 2, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (noting that "merits inquiry and statutory standing inquiry often overlap" and that "merits questions [can] ... be decided before statutory standing questions") (internal quotations omitted).

45. *E.g.,* Cpt. ¶¶ 189–191.

46. *Id.* ¶¶ 192–95; ATSI Mem. in Opp. to Levinson Motion 13, 16. The Complaint does not explain the significance of April 2000 to defendants' alleged scheme.

47. Cpt. ¶ 193.

48. ATSI Mem. in Opp. to Levinson Motion 13, 16.

49. Cpt. ¶¶ 196–200.

back period").[50] The Complaint alleges that "[i]f there was no manipulation, the Reference Price should approximate the ... average [price of stock during the thirty days prior to the look-back period]."[51] In other words, "[t]he ratio of the Reference Price to the ... 30 day average would be approximately 1.0."[52] In addition, absent manipulation, "the average daily trading volumes [between the look-back period and prior quarter] should be equal."[53]

Plaintiff is incorrect. Indeed, its position is ludicrous. Stock prices and trading volume are not constant over time absent fraud. Fluctuations in price and volume are natural and to be expected. Plaintiff's theory is all the more absurd given its premise that an average of the *lowest* prices during a ten-day trading period must equal or approximate an average of all prices during the preceding thirty days. Although a change in stock price or trading volume favorable to the defendants is relevant to whether a manipulation occurred, it does not, without more, give rise to an inference of fraud.[54]

*Third,* the Complaint alleges that the negative reaction of ATSI's stock price to positive news announcements is "evidence of manipulation."[55] Plaintiff identifies examples of company announcements be-

tween 2000 and 2002 which, it contends, should have resulted in positive market reactions but instead coincided with price drops ranging from 2 to 25 percent.[56] But the announcements concern events with no apparent connection to the defendants or this case.[57] As these allegations show neither a manipulation nor conduct attributable to the defendants, they fail.

*Finally,* the Complaint alleges that three charts containing certain trading data for the period December 2002 through January 2003 show manipulation.[58] Again, the Complaint fails adequately to explain how the data shows manipulation, let alone how it is linked to any of the defendants.

Nor do the allegations above, when considered together, give rise to an inference of fraud. There is no apparent connection among them. In any case, plaintiff does not allege sufficient facts to link this data to any of the defendants.

The manipulation claim against Trimark is even more tenuous. The only allegations against Trimark are that it "was the principal declared market maker in ATSI stock," that "any manipulation which took place would have involved Knight, who knew or should have known" about the manipulation, and that it "was a cooperat-

---

50. *Id.* ¶ 196 & n. 6.

51. *Id.* ¶ 198.

52. *Id.*

53. *Id.* ¶ 199.

54. Nor do the data upon which plaintiff relies support its theory. The Complaint contains a table that identifies, for each of the conversion dates, the Reference Price, the 30–day average, and the ratio of the Reference Price to the 30–day average. *Id.* ¶ 197. The table identifies the overall ratio for each series of preferred shares that was issued to the Levinson defendants (series B, C, and D) and to the Rose Glen defendants (series E). The average ratios for the series B, C, D, and E preferred

shares are 1.05, 1.94, 0.79, and 0.76, respectively. The overall average ratio for all of the series is 0.96. This data shows that in some instances the price went up prior to the conversion whereas in other instances it went down. Plaintiff does not deal with these data except to argue—incorrectly—that they support its theory.

55. *Id.* ¶ 204.

56. *Id.* ¶¶ 204–05.

57. *See id.*

58. *Id.* ¶¶ 206–13.

ing broker-dealer with the defendants."[59] These allegations are far too conclusory to past muster under Rule 9(b).

### D. Claims Against Other Alleged Primary Violators

The other defendants against whom the Complaint alleges primary violations of the federal securities laws are Corporate Capital Management ("CCM") and MG Securities Group, Inc. ("MG").[60] These defendants have not yet moved to dismiss. Nevertheless, the Complaint makes the same fraud claims against these defendants as it does against the Rose Glen and the Levinson defendants.[61] As plaintiff already has briefed whether those allegations are sufficient, further briefing is unnecessary and a ruling by the Court on the sufficiency of the Complaint is proper.[62] Accordingly, the securities claims against CCM and MG fail for the reasons that the claims against Rose Glen and the Levinson defendants fail—the Complaint fails adequately to allege falsity and loss causation.

### E. Control Person Liability

 The Complaint alleges control person liability based on alleged primary violations by Rose Glen and the Levinson defendants. As plaintiff has failed adequately to allege a primary violation, its Section 20(a) claims are dismissed.[63]

### Conclusion

The motions of the Levinson and Rose Glen defendants, Trimark, the Citco defendants, Hollman, Quilligan, Langeveld, Bloch, Kaminsky, and Katznelson, [docket items 122, 126–27, 132, 134, 136, 161, and 171] to dismiss the amended complaint are granted. The claims against defendants Corporate Capital Management and MG Security Group are also dismissed. As plaintiff has already had an opportunity to amend, dismissal is with prejudice.

---

**59.** *Id.* ¶¶ 220–222.

**60.** *Id.* ¶¶ 110–14, 226, 229.

**61.** As with the Levinson defendants, the Complaint alleges that CCM misrepresented that Shaar Fund intended to be a long-term investor and would not injure ATSI. *Id.* ¶¶ 111–12. It alleges also that CCM failed to disclose that Shaar Fund was a reputed stock manipulator, that most of the companies that Shaar Fund invested in went bankrupt or experienced sharp declines in stock price, and that Shaar Fund did business primarily through offshore entities. *Id.* The Complaint relies upon the same factual allegations to support these allegations as it does to support its allegations against the Levinson defendants.

The Complaint alleges also that CCM and MG participated in the market manipulation allegedly carried out by the Levinson and Rose Glen defendants. *Id.* ¶¶ 184–219. It alleges no additional facts to support the claims against CCM and MG.

**62.** *Cf. Perez v. Ortiz,* 849 F.2d 793, 797 (2d Cir.1988) (*sua sponte* dismissal of a complaint may be appropriate where plaintiff has opportunity to be heard); *see Bonnie & Co. Fashions v. Bankers Trust Co.,* 945 F.Supp. 693, 719 (S.D.N.Y.1996) (dismissing *sua sponte* fraud claim on Rule 9(b) grounds).

**63.** *See Rombach,* 355 F.3d at 177–78 (where primary securities claims are dismissed, control person claims predicated on those claims must also be dismissed). Langeveld, Hollman, Quilligan, and the Citco defendants move to dismiss on the alternative ground that the Court lacks personal jurisdiction. Generally, a court should determine whether it has personal jurisdictional over the parties before addressing the substantive merits of a motion to dismiss. *See Arrowsmith v. United Press Int'l,* 320 F.2d 219, 221 (2d Cir.1963) (en banc) (error for district court to dismiss a complaint for failure to state a claim before addressing whether it had personal jurisdiction over defendant). However, where, as here, "the affected defendant does not insist that the jurisdictional issue be determined first, and no special circumstances exist," a court may dismiss on the merits without reaching the issue of personal jurisdiction. *Feinstein v. Resolution Trust Corp.,* 942 F.2d 34, 40 (1st Cir.1991).

The parties are invited to submit papers on the issue of the appropriateness of sanctions.[64] Parties seeking the imposition of sanctions shall file and serve any such papers on or before March 7, 2005. Opposition papers shall be filed and served no later than March 21, 2005. Plaintiff's opposition, if any, should be submitted as a single, consolidated document. Any reply shall be filed no later than March 28, 2005.

SO ORDERED.

---

64. The PSLRA requires that a district court, at the conclusion of any private securities action, "include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b)." 15 U.S.C. § 78u–4(c)(1). Prior to finding a violation of Rule 11, the Court must give the offending party or attorney notice and an opportunity to respond. *Id.* § 78u–4(c)(2). In addition, if the court determines that the rule has been violated, it must impose sanctions. *Id.*