In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-3285

ROBERT F. BOOTH TRUST and
RONALD GROSS, derivatively on behalf of
SEARS HOLDING CORPORATION,

*Plaintiffs-Appellees*,

*v.*

WILLIAM C. CROWLEY, *et al.*,

*Defendants-Appellees*.

APPEAL OF:

THEODORE H. FRANK,

*Intervenor*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 5314—**Ronald A. Guzmán**, *Judge*.

ARGUED MAY 30, 2012—DECIDED JUNE 13, 2012

Before EASTERBROOK, *Chief Judge*, and BAUER and
POSNER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. When Sears, Roebuck & Co.
merged with Kmart Corp. in 2005, the holding company

formed as the parent (Sears for short) inherited directors from both businesses. This suit concerns two of them: William C. Crowley and Ann N. Reese. Crowley also serves on the boards of AutoNation, Inc., and AutoZone, Inc., and Reese on the board of Jones Apparel Group, Inc. Two of Sears's shareholders contend that the consolidated business competes with those other firms and that §8 of the Clayton Act, 15 U.S.C. §19, forbids the interlocking directorships.

This is a shareholders' derivative action rather than a suit directly under §8. The theory in a derivative suit is that a corporation's board has been so faithless to investors' interests that investors must be allowed to pursue a claim in the corporation's name. Sears is incorporated in Delaware, whose law determines whether investors may litigate derivatively on its behalf. See *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90 (1991). Sears asked the district court to dismiss the suit, observing that Delaware usually allows investors to sue derivatively only if, after a demand for action, the board cannot make a disinterested decision. See *Braddock v. Zimmerman*, 906 A.2d 776, 784–85 (Del. 2006) (collecting authority). The two investors—Robert F. Booth Trust and Ronald Gross—filed this suit without first demanding that the board address the §8 issue. Sears observed that a majority of the board has no stake in the §8 question and can decide where the corporation's interests lie. But the district court refused to dismiss the suit, accepting the investors' assertion that a demand would have been futile. 2010 U.S. Dist. LEXIS 18355 (N.D. Ill. Feb. 26, 2010).

Later the judge concluded that, despite *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977), and its successors, §8 can be enforced through derivative litigation, even though cooperation with a competitor should benefit the investors. The concern of antitrust law, after all, is that producers will cooperate and raise prices to the detriment of consumers. Higher prices mean lower output and a social loss through misallocation of resources. Yet no consumer has complained about the other directorships held by members of Sears's board, nor has the Department of Justice or the Federal Trade Commission raised an eyebrow. It seems odd to allow investors, who stand to gain if producers with market power cooperate, to invoke an antitrust doctrine that is designed for strangers' benefit. The problem is not only that perpetrators of antitrust offenses lack standing to complain about their own misconduct (which inures to their profit), but also that, when such people do invoke the antitrust laws, likely they have other objectives in view. In *Brunswick* the antitrust claim had been used to give one producer an advantage by shuttering a rival, at the expense of customers; the Supreme Court replied that this abuse of antitrust law must not be tolerated. It created the antitrust-injury doctrine, under which private antitrust litigation is limited to suits by those persons for whose benefit the laws were enacted. See also *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990); *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104 (1986).

Plaintiffs rely on *Protectoseal Co. v. Barancik*, 484 F.2d 585 (7th Cir. 1973), for the proposition that private plaintiffs

can enforce §8. We don't doubt this—but *Protectoseal* was not a shareholders' derivative suit, and the antitrust-injury doctrine, which the Supreme Court adopted four years after *Protectoseal*, limits which private parties can pursue §8 claims.

Antitrust suits are notoriously costly. See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557–60 (2007). To resolve a case under §8, a district judge must define a market and decide whether a merger between Sears and one of the firms interlocked by the directorships would be unlawful. After the district judge held that this case must proceed, the investors and Sears proposed a settlement: one of the two contested directors would resign, and the lawyers representing the investors could request as much as $925,000 in fees under a "clear sailing" clause that prohibited Sears from objecting. Perhaps Sears concluded that it was better to jettison one director and pay up to $925,000 in legal fees to opposing counsel than to dig in its heels and pay its own lawyers more than $1 million to defend an antitrust suit. But Theodore H. Frank, another of Sears's investors, thought the settlement a bad deal. It cost the firm cash out of pocket plus a director the shareholders had re-elected in 2009 (four years after the Kmart merger), without eliminating the risk of a later §8 suit by someone else (since one of the two directors would remain).

The settlement of derivative litigation requires notice to other investors, followed by judicial approval, see Fed. R. Civ. P. 23.1(c). Frank moved for leave to intervene so that he could oppose the settlement and appeal if

necessary—for under the law of this circuit intervention (and thus party status) is essential to an appeal in a derivative suit. See *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998), affirmed by an equally divided Court under the name *California Public Employees' Retirement System v. Felzen*, 525 U.S. 315 (1999). But the district court denied this motion, stating that Booth Trust and Gross adequately represent Frank's interests. Frank immediately appealed, which is proper when a district court denies a motion for leave to intervene as of right under Fed. R. Civ. P. 24(a). See *Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507 (1950).

After the district judge denied Frank's motion to intervene, it also rejected the proposed settlement, though on grounds that allowed the parties to try again. Plaintiffs have asked us to dismiss the appeal as moot. Yet the case remains pending, and the parties have submitted another settlement for the district judge's approval. Even though the interlocks are gone—Crowley is no longer on Sears's board, and Reese has left the board of Jones Apparel—the prospect of future interlocks prevents the suit from being moot. See *United States v. W.T. Grant Co.*, 345 U.S. 629 (1953). Frank wants to oppose any settlement (indeed, wants the district court to dismiss the suit) and appeal if one should be approved. Both the merits and the propriety of intervention are live issues. The motion to dismiss is denied.

The district judge's reason for denying Frank's motion to intervene—that Booth Trust and Gross adequately represent his interests—is unsound. Frank's position is

entirely incompatible with the stance taken by Booth Trust and Gross. Rule 23.1(c) requires judicial approval of settlements in derivative suits precisely because the self-appointed investors may be poor champions of corporate interests and thus injure fellow shareholders. That the plaintiffs *say* they have other investors' interests at heart does not make it so. The district judge did not find that plaintiffs are right, and Frank wrong, about where the corporate interest lies. And even if the judge had concluded that the plaintiffs have the better of their dispute with Frank, still the judge should have granted his motion to intervene—for given *Felzen* the only way he can get appellate review is to become a party. A district judge ought not try to insulate his decisions from appellate review by preventing a person from acquiring a status essential to that review. In *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877, 881 (7th Cir. 2000), we told district judges to grant intervention freely to persons who want to contest settlements in class actions under Fed. R. Civ. P. 23; that is no less true of derivative actions under Rule 23.1.

Our conclusion that Frank is entitled to intervene makes it unnecessary to decide whether *Felzen* survives *Devlin v. Scardelletti*, 536 U.S. 1 (2002). *Devlin* holds that a member of a class certified under Rule 23, who asks the district court not to approve a settlement, need not intervene in order to appeal an adverse decision. Our opinion in *Felzen* gives several reasons why investors in a derivative suit differ from members of a certified class. See 134 F.3d at 875–76. For example: a class member holds a personal claim for relief, which could be extin-

guished or cashed out by a settlement; but an investor does not hold any kind of personal stake in a derivative suit. The chose in action belongs to the corporation. Intervention separates an objecting investor from the thousands or even millions of shareholders, bondholders, employees, suppliers, and customers who could be affected, more or less directly, by the resolution of a derivative action.

The Supreme Court affirmed *Felzen* without opinion by a vote of 4–4. *Devlin* was decided by a vote of 6–3. This suggests that one or two Justices see a difference between the Rule 23 situation and the Rule 23.1 situation. It is thus hard for a court of appeals to be confident that the Supreme Court as a whole would conclude that *Devlin* controls derivative actions as well as class actions. We think it best to leave the status of *Felzen* to another day—a day that, if district judges grant party status to serious objectors as they should, need never arrive.

We could stop at this point and leave the parties to slug it out in the district court, with an appeal by whoever loses (or objects to a settlement). But this litigation is so feeble that it is best to end it immediately, as both Sears and Frank unsuccessfully asked the district judge to do. The only goal of this suit appears to be fees for the plaintiffs' lawyers. It is impossible to see how the investors could gain from it—and therefore impossible to see how Sears's directors could be said to violate their fiduciary duty by declining to pursue it. See *Schechtman v. Wolfson*, 244 F.2d 537, 540 (2d Cir. 1957) (refusing, for this reason, to award attorneys' fees to the plaintiffs in a derivative suit based on a §8 claim).

We have mentioned that Booth Trust and Gross did not make a demand on the directors before filing suit, and that neither plaintiff nor any other investor (in his role as investor) suffers antitrust injury. Plaintiffs say that investors still can gain from this suit, because removing interlocking directors from the board will eliminate any chance that the United States will file a §8 suit to remove them. We don't get it. In order to avoid a *risk* of antitrust litigation, the company should be put through the litigation wringer (this suit) *with certainty*? How can replacing a 1% or even a 20% chance of a bad thing with a 100% chance of the same bad thing make investors better off?

Actually, the chance of suit by the United States or the FTC is not even 1%. The national government rarely sues under §8. *Borg-Warner Corp. v. FTC*, 746 F.2d 108 (2d Cir. 1984), which began in 1978, may be the most recent contested case. See ABA Section of Antitrust Law, I *Antitrust Law Developments* 425–31 (6th ed. 2007). When the Antitrust Division or the FTC concludes that directorships improperly overlap, it notifies the firm and gives it a chance to avoid litigation (or to convince the enforcers that the interlock is lawful). For more than 30 years, this process has enabled antitrust enforcers to resolve §8 issues amicably—either avoiding litigation or entering consent decrees contemporaneous with a suit's initiation. It is an abuse of the legal system to cram unnecessary litigation down the throats of firms whose directors serve on multiple boards, and then use the high costs of antitrust suits to extort settlements (including undeserved attorneys' fees) from the targets.

Plaintiffs told the district judge that a demand on directors would have been futile—and surely they are right, because, if they had made a demand, conscientious directors acting in investors' interests *would* have nixed this suit. That's a reason to require demand, not to excuse it. The suit serves no goal other than to move money from the corporate treasury to the attorneys' coffers, while depriving Sears of directors whom its investors freely elected. Directors other than Crowley and Reese would not have violated their fiduciary duty of loyalty by concluding that these two directors benefit the firm. Usually serving on multiple boards demonstrates breadth of experience, which promotes competent and profitable management. If the Antitrust Division or the FTC sees a problem, there will be time enough to work it out. Derivative litigation in the teeth of the demand requirement and the antitrust-injury doctrine is *not* the way to handle this subject.

The judgment of the district court is reversed, and the case is remanded with instructions to grant Frank's motion for leave to intervene and to enter judgment for defendants.