In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 18-2220, 18-2221, 18-2225, 18-3307, 19-2401, and 19-2408

JORGE ALCAREZ, *et al.*, as representatives of a class,

*Plaintiffs-Appellees*,

*v.*

AKORN, INC., *et al.*,

*Defendants-Appellees*.

Appeals of THEODORE H. FRANK, SHAUN A. HOUSE, and DEMETRIOS PULLOS

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
Nos. 17 C 5016, 5017, 5018, 5021 & 5026 — **Thomas M. Durkin**, *Judge*.

_____

ARGUED NOVEMBER 6, 2018, and APRIL 14, 2020
— DECIDED APRIL 15, 2024

_____

Before EASTERBROOK and WOOD, *Circuit Judges*.[*]

_____

[*] Circuit Judge Kanne, a member of the panel, died after the appeals were argued. They are being decided by a quorum. 28 U.S.C. §46(d).

EASTERBROOK, *Circuit Judge*. Six suits, filed under the federal securities laws, present questions about "mootness fees" in federal litigation. Akorn, Inc., asked its investors to approve a merger (valued at more than $4 billion) with Fresenius Kabi AG. Plaintiffs assert that the proxy statement (82 pages long, with 144 pages of exhibits) should have contained additional details, whose absence violated §14(a) of the Securities Exchange Act of 1934, 15 U.S.C. §78n(a). Within weeks Akorn amended its proxy statement to add some disclosures, though it insisted that none of these additions was required by law.

All six plaintiffs then moved to dismiss their suits, asserting that the additional disclosures mooted their complaints. They did not notify the proposed classes (five of the six suits had been filed as class actions) or seek judicial approval under Fed. R. Civ. P. 23(e). Different district judges entered orders of dismissal between July 17 and July 25, 2017.

Akorn's shareholders overwhelmingly approved the merger, with only 0.1% of all votes cast against. Many of the proxies had been voted before Akorn's supplemental disclosures; plaintiffs did not protest. On September 15 all six plaintiffs told the district court that any claim to attorneys' fees and costs had been resolved by a payment of $322,500, which counsel would divide. Those are the mootness fees. The proposed merger was abandoned for reasons unrelated to these suits, but that does not affect the dispute about what to do with this money.

Theodore Frank, one of Akorn's shareholders, learned through the press that Akorn had paid mootness fees and on September 18, 2017, filed a motion to intervene. He asked the court to require counsel to disgorge the money as unjust

enrichment (since they had not achieved any benefit for the investors). He also asked the court to enjoin the lawyers who represented the six plaintiffs to stop filing what Frank calls strike suits, whose only goal is to extract money for counsel. Frank contends that the suits amount to abuse of the legal process. Indeed, this court has remarked that litigation "that yields fees for class counsel and nothing for the class is no better than a racket. It must end." *In re Walgreen Co. Stockholder Litigation*, 832 F.3d 718, 724 (7th Cir. 2016) (cleaned up). But litigation of this kind has not ended since *Walgreen*.

Delaware, where most suits seeking extra disclosure had been filed, decided that they would be subject to "disfavor in the future unless the supplemental disclosures address a plainly material misrepresentation or omission". *In re Trulia, Inc. Stockholder Litigation*, 129 A.3d 884, 898 (Del. Ch. 2016). Delaware already had limited the payment of mootness fees unless the suit was meritorious. *In re Sauer-Danfoss Inc. Shareholders Litigation*, 65 A.3d 1116, 1123 (Del. Ch. 2011). The combination of *Sauer-Danfoss* with *Trulia* initially led to a decline in suits seeking more disclosure for mergers. In 2012 90% of deals worth more than $100 million were challenged in litigation. In 2013 that proportion rose to 96%. *Trulia* knocked it down to 74% in 2016. By 2017 and 2018 the proportion was back to 83%. And the location of the suits changed radically. In 2012 56% of these suits were in Delaware and 34% in federal court. By 2018 only 5% were in Delaware and 92% in federal court. These figures come from Matthew D. Cain, Jill E. Fisch, Steven Davidoff Solomon & Randall S. Thomas, *Mootness Fees*, 72 Vand. L. Rev. 1777, 1787 (2019). By filing in federal court plaintiffs avoid *Trulia*—for federal courts use their own procedures, whether the claim arises under state or federal law. See, e.g., *Shady Grove Orthopedic Associates, P.A. v. Allstate*

*Insurance Co.*, 559 U.S. 393 (2010); *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415 (1996); *Mayer v. Gary Partners & Co.*, 29 F.3d 330 (7th Cir. 1994).

These six cases illustrate the federal practice. Suits are filed as class actions seeking more disclosure but not contending that any of the existing disclosures is false or materially misleading. Such a claim is problematic under federal securities law. See, e.g., *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, No. 22–1165 (U.S. Apr. 12, 2024) (nondisclosure does not violate Rule 10b–5). Counsel for the plaintiffs and counsel for the firms involved agree on additional disclosures. The suits are then dismissed and mootness fees paid. Plaintiffs do not move for class certification, and Rule 23(e), which requires judicial approval only when a certified class action is settled or dismissed, does not come into play. The class is not notified.

Because plaintiffs and defendants agree on the fees, the judge is not asked to award anything. A statute providing that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class", 15 U.S.C. §78u–4(a)(6) (part of the Private Securities Litigation Reform Act or PSLRA), does not apply, because the judge does not "award" fees. And if a class member finds out and objects, as Frank did, he is met with the response that the suit is moot and there is nothing to object *to*. The upshot: money moves from corporate treasuries to plaintiffs' lawyers; the investors get nothing, yet the payment diminishes (though only a little) the market price of each share. That's why *Walgreen* called this "no better than a racket." But with the judiciary and investors cut out of the

process, they cannot do anything about it. Or so class counsel insists.

Frank asked the judge to do something, such as ordering counsel to disgorge unearned money or issuing an injunction blocking mootness fees in future cases. Before the district judge could rule, counsel for three of the six plaintiffs disclaimed their portions of the $322,500. The district judge then denied Frank's motion to intervene in those cases, stating that, because he did not anticipate awarding any of the remedies Frank requested, intervention would be "moot." Frank's appeals were orally argued in November 2018.

We put those appeals on hold pending the disposition of the three remaining cases, in which the lawyers wanted some share of the fund (which one of them was holding for the group's benefit). In these three cases, the district judge again denied Frank's motion to intervene but permitted him to participate as *amicus curiae*. The judge took to heart the admonition in *Walgreen* that suits seeking extra disclosure should be reviewed immediately after being filed. Acknowledging that he had not done that, he reopened the suits, concluded that the complaints were frivolous, and found that the extra disclosures were worthless to investors. In light of that finding the judge ordered counsel to return Akorn's money. *House v. Akorn, Inc.*, 385 F. Supp. 3d 616 (N.D. Ill. 2019). One of the three lawyers accepted that outcome. Two did not and have appealed. (Technically, the would-be representative plaintiffs have appealed, seeking an order that will let their lawyers divvy up the $322,500 pot.) Frank also has appealed, because he is still not a party and wants additional relief. These three final appeals were argued in April 2020, and all six appeals are now ready for decision.

Shaun House and Demetrios Pullos, the two plaintiffs who have appealed, contend that the district court lacked jurisdiction to reopen a dismissed case. The complaints had been dismissed, none of the litigants was unhappy, and there was nothing more for the court to do, they maintain. Although Fed. R. Civ. P. 60(b) allows judges to reopen cases, that must be done "on motion", according to the Rule, and none of the litigants had filed a motion. But this does not take Frank into account. If he should have been allowed to intervene, he will become a party and may file motions.

Plaintiffs insist that Frank lacks standing—and if Frank lacks standing, then House and Pullos also lack standing, for they will not recover a penny or obtain any other relief whether or not the attorneys collect fees. Their lack of interest in the outcome is so clear that we dismiss their appeals. Frank's standing remains to be decided.

Frank suffers some loss from diversion of corporate money, which affects the value of his shares. The diminution is minimal—$322,500 is small beer in a $4 billion transaction, something like 0.008% of the value of Frank's shares. Still, that is a few cents. The Supreme Court tells us that an "identifiable trifle" suffices for standing. *United States v. SCRAP*, 412 U.S. 669, 688–90 & n.14 (1973).

A concrete loss, caused by the complained-of conduct and remediable by the judiciary, supplies standing. See, e.g., *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). So we have held that a small loss caused by a brief inability to use a credit card after a data breach confers standing. See, e.g., *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826 (7th Cir. 2018); *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963 (7th Cir. 2016); *Remijas v.*

*Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015). We have held that even a few pennies' loss of potential interest (on a small non-interest-bearing deposit), see *Goldberg v. Frerichs*, 912 F.3d 1009 (7th Cir. 2019), or a brief delay in receiving income, *Brown v. CACH, LLC*, 94 F.4th 665 (7th Cir. 2024), amounts to a concrete injury. Only a "de minimis loss" threshold for standing would throw out Frank's contention, and the Supreme Court has not announced such a threshold.

Plaintiffs are mistaken to think that Frank needs to make a demand on the board of directors, and pursue a derivative action, rather than intervene personally. True, the $322,500 is a loss to the corporate treasury, but Frank does not contend that Akorn's directors violated their fiduciary duties. The mootness fees may well have cost Akorn less than what its own lawyers would have billed to defend the suits. This means that the directors did not violate either the duty of care or the duty of loyalty when paying to buy peace. Frank contends that class counsel violated their duties *to him* when they used the class allegations as leverage to obtain private benefits. The existence of duties to class members is clear after a judge certifies a class. See *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946–47 (9th Cir. 2011); *Back Doctors Ltd. v. Metropolitan Property & Casualty Insurance Co.*, 637 F.3d 827, 830–31 (7th Cir. 2011); *Martens v. Thomann*, 273 F.3d 159, 173 n.10 (2d Cir. 2001) (Sotomayor, J.) (citing *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 331 (1980)). There is no such duty if the judge has definitively ruled against certification. How things stand while certification is an open question is itself an open question. No matter how that question is resolved, however, Frank's contention that the representative plaintiffs and their lawyers owed duties to him, personally,

need not be processed through the mechanism for derivative litigation.

So was the district judge right to deny Frank's motion to intervene? Certainly not for the reason he gave. "I'm planning to reject your proposed remedies, so your request is moot" is not a recognized legal doctrine. A case becomes moot only when it is *impossible* to grant effective relief. See, e.g., *Mission Product Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019). It was possible to grant the sort of relief Frank requested. A decision not to do so is one on the merits, not a conclusion that the case does not present a case or controversy under Article III (which is what it means to call it moot). If "you are going to lose, so your claim is moot" were a proper approach, unsuccessful suits would be dismissed as moot rather than on the merits. That's not how things are supposed to work. See, e.g., *Bell v. Hood*, 327 U.S. 678 (1946).

When the representative plaintiffs and the defendants strike a deal, intervention by a member of the class may be essential to protect the class's interests. We have told judges to grant intervention freely when a class member contends that the representatives (or, more realistically, their lawyers) are misbehaving. See, e.g., *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877 (7th Cir. 2000); *Robert F. Booth Trust v. Crowley*, 687 F.3d 314, 318–19 (7th Cir. 2012). Indeed, under some circumstances, class members are entitled to appellate review without intervention. See *Devlin v. Scardelletti*, 536 U.S. 1 (2002). Just being in the class entitles a dissatisfied member to appellate review of a contention that the putative representative has acted against the class's interests.

Frank sought to intervene both as of right under Fed. R. Civ. P. 24(a) and permissively under Rule 24(b). The motion

is timely; Frank acted soon after learning of the mootness fees. See *Cameron v. EMW Women's Surgical Center, P.S.C.*, 595 U.S. 267, 279–81 (2022). The district court addressed only his proposal to intervene as of right—and then only in three of the six cases. If the district judge had concluded that Frank lacks "a claim or defense that shares with the main action a common question of law or fact" (Rule 24(b)(1)(B)), appellate review would be deferential. But the district judge did not make any findings on this subject. It seems to us that, as an investor in Akorn whose shares' value was affected by the merger and the mootness fees, Frank has a claim in common with the main action; how could it be otherwise? After all, Frank is a member of the proposed classes. And since class counsel and Akorn are looking out for their own interests rather than those of the class, intervention is appropriate. We hold that Frank is entitled to participate as a party. And that could solve any problem with reopening the judgments, because as a party Frank would be entitled to make the motion required for relief under Rule 60(b). He will have that opportunity on remand.

But the remedies that Frank initially proposed, such as disgorgement or an injunction, are not satisfactory. Disgorgement would be appropriate only if the mootness fees had been retained by counsel, yet the district judge has ordered the money returned. An injunction against repetition might be appropriate with respect to the individual plaintiffs, but Frank wants relief against the lawyers, who are repeat players—and the lawyers are not parties, so they would not be proper objects of injunctive relief unless they were added as parties. And Frank recognizes that Rule 23(e) deals only with cases certified as class actions, which these were not. Perhaps the rules committees of the Judicial Conference should take a

look at the question whether judicial approval should be required to settle or dismiss cases brought as class actions, yet not so certified, but we must enforce the rule as it stands.

As this case proceeded, however, Frank turned his attention to the Private Securities Litigation Reform Act. Two of its provisions may affect the proper treatment of suits filed in quest of mootness fees. We have mentioned one—15 U.S.C. §78u–4(a)(6), which says that attorneys' fees "awarded" by a court "shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." This rule applies to all securities suits "brought" as class actions, whether or not they are so certified. See §78u–4(a)(1) ("The provisions of this subsection shall apply in each private action arising under this chapter that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."). See also *Higginbotham v. Baxter International Inc.*, 495 F.3d 753, 756 (7th Cir. 2007). Yet §78u–4(a)(6) does not do any work when the defendant pays fees voluntarily rather than insisting on a judicial award.

The other statute, 15 U.S.C. §78u–4(c)(1), tells us:

> **Mandatory review by court**[.] In any private action arising under this chapter, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion.

"This chapter" means the whole Securities Exchange Act of 1934 (which is Chapter 2B of Title 15), and the six suits invoked that statute. The caption calls this review "mandatory," and the word "shall" tells us that the caption is accurate. The district court must make the required findings whether or not

a litigant asks. *City of Livonia Employees' Retirement System v. Boeing Co.*, 711 F.3d 754, 757, 761 (7th Cir. 2013). Accord, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 152 (2d Cir. 2009); *Morris v. Wachovia Securities, Inc.*, 448 F.3d 268, 283–84 (4th Cir. 2006).

The dismissal of each suit was a "final adjudication of the action"; settlements were the reasons for the dismissals, but the statute applies to the judicial action, not to the reason for it. It obliges the judge to determine whether each suit was proper at the moment it was filed. The statute directs the court to the  criteria of Fed. R. Civ. P. 11, which entails notice and an opportunity to be heard. Those steps have not been put in motion, given the denial of Frank's motion to intervene, but they should occur on remand.

Rule 11(b) provides:

By presenting to the court a pleading, written motion, or other pa-per—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are war-ranted by existing law or by a nonfrivolous argument for ex-tending, modifying, or reversing existing law or for establish-ing new law;

(3) the factual contentions have evidentiary support or, if spe-cifically so identified, will likely have evidentiary support af-ter a reasonable opportunity for further investigation or dis-covery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

From Frank's perspective, the very purpose of these suits was "needlessly [to] increase the cost of litigation" (Rule 11(b)(1)) in order to induce Akorn to pay the lawyers to go away. He contends that the suits violate the other three paragraphs as well. And that is essentially what the district judge found when he finally looked at the complaints.

On the current record we are inclined to agree with the district judge's analysis. He wrapped up:

> [T]he Court finds that the disclosures sought in the three complaints at issue [the three for which counsel declined to waive their share of the mootness fees] were not "plainly material" and were worthless to the shareholders. Yet, Plaintiffs' attorneys were rewarded for suggesting immaterial changes to the proxy statement. Akorn paid Plaintiffs' attorney's fees to avoid the nuisance of ultimately frivolous lawsuits disrupting the transaction with [Fresenius]. The settlements provided Akorn's shareholders nothing of value, and instead caused the company in which they hold an interest to lose money. The quick settlements obviously took place in an effort to avoid the judicial review this decision imposes. This is the "racket" described in *Walgreen*, which stands the purpose of Rule 23's class mechanism on its head; this sharp practice "must end." 832 F.3d at 724.

> Plaintiffs' cases should have been "dismissed out of hand." *See id*. at 724. Since the Court failed to take that action, the Court exercises its inherent authority to rectify the injustice that occurred as a result. The settlement agreements are abrogated and the Court orders Plaintiffs' counsel to return to Akorn the attorney's fees provided by the settlement agreements. Plaintiffs' counsel should file a status report by July 8, 2019 certifying that the fees have been returned.

385 F. Supp. 3d at 622–23 (one citation omitted). The district court's reference to "inherent authority" should have been to §78u–4(c)(1) and Rule 11, but with that change the analysis holds. Still, our reference to "the current record" is important; a formal motion under Rule 60(b) is necessary, and counsel are entitled to be heard.

Because Rule 11(c)(4) gives the district judge discretion over the choice of sanction, the court would be entitled to direct counsel who should not have sued at all to surrender the money they extracted from Akorn. But selecting an appropriate remedy (if any) should await resolution of the proceedings under §78u–4(c)(1) and, derivatively, Rule 11.

The orders of the district court denying Frank's motion to intervene are vacated, and the cases are remanded with instructions to treat him as an intervenor, permit him to make a motion under Rule 60(b), and decide what relief, if any, is appropriate in light of that motion should one be made. The appeals by House and Pullos are dismissed for lack of jurisdiction because they have not explained how, if at all, the district court's orders adversely affect them, as opposed to counsel.